May it please the Court, David Menninger on behalf of Appellant Ivan Vidal-Castillo. I intend to devote the bulk of my time to addressing the District Court's denial of the motion to dismiss under 13-2060 and then briefly address the erroneous application of the Sentencing Enhancement for a post-deportation felony and then reserve three minutes of my time. You are going to address the question we asked you? Absolutely, and I can begin with that if the Court would like. Okay. So this Court asked the parties to address whether a collateral estoppel barred his 13-2060. And I'm not sure it's collateral estoppel. We didn't really ask about collateral estoppel. We just asked what's the effect of he pleaded guilty in 2010 to illegal reentry, never attacking the deportation order. Six years later, seven years later, he's arrested again. And now for the first time, he was represented by counsel before. He says there's a problem with the deportation order. I mean, is there a limit to this? Could he be convicted of illegal reentry 14 times and then the 15th time attack the order? And I must say I don't know the answer to this question. That's why we asked the parties. I mean, was there something about the 2010 proceedings? I mean, did he just plead guilty to that? And what were the factual basis? Sure. So let me break apart the Court's questions here. I think just specifically to Judge Wardlaw's question, he did plead guilty. There was a guilty plea that was entered. Was he represented by counsel? He was represented by counsel. It appears that he did not challenge the law. Yeah, and I've tried to go through the record in that case, and I can't find a colloquy. Yeah. Where somebody said to him, you got any problem with the order? So I'm not suggesting any findings were made about the order. I'm just. . . Absolutely. Wasn't that his opportunity to get judicial review? So. . . I mean, it's analogous to collateral estoppel, but it's not quite collateral estoppel. It goes directly to your argument or to your answer to the argument that this was, that he didn't exhaust his remedies. He had an opportunity to get judicial review of the first conviction, and he didn't take it, so he had it. So, Your Honor, I think that question goes to the point. So I guess there's two potential arguments. One would be a freestanding collateral estoppel. Right, and I don't think an element of the crime is that the order, that the removal be valid. You just, an element of the crime is that you be removed. One of the defenses is that the order isn't valid. So I'm not worried. . . It could have been raised. There is something to the rest of the. . . But there's. . . I mean, it is something that could have been raised in the prior procedure. Yeah, that's the issue I think you need to address. Why say, if you're going to make this kind of argument, you ought to do it the first time you're charged with illegal reentry? Well, I should just say, and I understand. . . So the argument the government has made is a textual argument, as Judge Corman indicates, under 1326d.2, that he did not, that he was not deprived of the opportunity. . . Yeah, but let's assume he was. Let's assume that. . . Sure. Just, why does he get to wait to raise that till the third, till the second time? Well, specifically speaking with the collateral estoppel issue, the ninth. . . This Court has said, specifically with 1326d. . . Collateral estoppel requires a finding. I don't think there's collateral estoppel. Yeah, it can't be collateral estoppel. It's claim preclusion, as Judge. . . Well, it could have been raised in the prior. . . Could have been raised and wasn't. And it wasn't. Sure. So that would be the. . . That's sort of a res judicata. Well, so I would point this Court to Smith-Balteher, in which this Court is similar situation. He had pled guilty to a 1326.2 illegal reentry and then subsequently wanted to challenge the element of alienage. And the district court said, you're precluded, you pled guilty. And this Court reversed and said, no, that doctrine does not apply. That doctrine, which really comes out of civil cases. . . Right. . . . does not apply against a criminal defendant. Well, I mean, that's different than whether you can collaterally attack an order. And what the statute requires is that the order not be subject to judicial review. So. . . And if there were only one conviction here or only. . . this was the first time it would. . . I think it probably wouldn't be subject because he wasn't given a fair opportunity to consider his appeal waiver. But it was subject to judicial review 10 years before. Subject to. Respectfully, Your Honor, I would respectfully disagree with the Court's reading of 1326.d.2. What that says is that the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review. It does not say. . . So you're saying it has to be the proceedings before the IJ or the BIA and not a subsequent criminal proceeding. Exactly. So it doesn't apply. It doesn't say that he never had any opportunity for judicial review. It says it really looks just. . . That proceeding deprived him of the opportunity. Absolutely, Your Honor. And I would note that no court. . . the government has not pointed to any instance in which a court has accepted its theory that a prior criminal proceeding was relevant. Well, to be fair, the government wasn't given the opportunity to because nobody raised this issue. We did. So maybe somebody will point to a case today. I'm not aware of a case. That's why I think. . . I thought it was. . . Yeah. A question to ask. Yeah. Because I'm sure this is not an unusual situation. We've seen petitioners and defendants in 1326 who have had multiple 1326 convictions and then we see on a subsequent one. It's just not an issue. I think we actually have a case on point. You said Smith-Baltier? Yes. Smith. And it is cited in our reply brief, Your Honor. B-A-L-T-I-H-E-R. I believe it's a case from 2000. I mean, that's on the collateral. . . I'm sorry, in 2005. And that's on the collateral estoppel point. Okay. Specifically. . . I don't have it in front of me. Perhaps one of my law clerks will get it. But it sounds familiar to me for some reason, so. . . I think, Your Honor, it might have been on the panel. Okay. Don't quote me on that. I knew it sounded familiar. And I would note also, to the extent this Court is wondering about a freestanding collateral estoppel challenge, of course the words collateral estoppel did not appear anywhere, as far as I can tell, in the record or the appellate briefs. Had that challenge been raised, we would. . . One issue is a full and fair opportunity to raise that issue. Because there was no freestanding collateral estoppel challenge, the defense had no reason to investigate, for example, whether he was even advised of his right to collaterally attack the order. All right. So let's get to the nub of this, which is the motion to dismiss the indictment. And whether your client made an additional request for relief during the hearing that precluded voluntary departure. Right. So, you know, my client. . . The government's position is that when my client said, I'm trying to stay here, he requested cancellation of removal such that he made himself ineligible for voluntary departure. And I'm not impressed by that argument, I must say. But what about the fact that he contested removability with respect to being improperly in the country? Not with respect to the CIMT. Right. So the regulation requires, in order to be eligible, that you concede removability. And he did concede removability. You know, it only takes one charge of removability to remove someone frequently. There's no reason. Many, many people are removed just on one charge of removability. So that concession was enough. Again, the court didn't actually ask him whether he conceded or contested the second charge, having unlawfully reentered. And I think it's clear at the hearing, my client repeatedly said, I don't know, I don't know. In the district court. . . I'm sorry, the immigration judge misremembered that. At the second hearing two weeks later, he said, you know, Mr. Baral-Castillo had denied that charge, but that's not what happened. The immigration judge deemed it denied because my client just didn't know. And, again, I think this court addressed the argument that I'm trying to stay here as not an application for cancellation of removal. I think that has no basis in even the BIA's case law. And I think, moreover, it really goes against the overriding principle that this court has said, which is that immigration court should not be too strict in tone and operation. Someone should not, you know, lose all their rights just because at one point they say the wrong thing. After my client said, I'm trying to stay here, the judge says, no, there's no way for you to stay here. And he said, okay, that's as you please. I see I'm almost out of time, so I think I'll reserve the rest of my time. Thank you, Your Honor. Good morning, Your Honors. Graham Alden for the United States. To start with the Court's question about the opportunity for judicial review, there are no published cases, that is correct, or even unpublished cases on the topic of what's the need for judicial review. And you didn't raise it, so maybe we should just punt on this one. I do think that the government did raise the argument at GAB, page 36 of our answering brief, where we argue that this defendant cannot possibly show that he had no opportunity for judicial review under 1326D-2 once he had a prior illegal reentry proceeding and pled guilty. And the reason that that is the case is because 1326D was designed to afford an alien an opportunity in accord with due process after the Supreme Court's decision in Mendoza-Lopez. And what the Supreme Court said was that an alien must be afforded some meaningful opportunity. Right. The Supreme Court said that, but what does the statute say? So the statute was enacted in response to the Supreme Court's decision. Right. I understand, but what does it say? And it says specifically that the alien must show that the proceedings at which the order was issued improperly deprived him of the opportunity for judicial review. Well, and so don't we focus on the proceedings at which the – What that seems to say is, look, you were led not in those proceedings to seek judicial review. It doesn't – it focuses on those proceedings. I think in this case he makes a good case that he was denied in those proceedings the opportunity to seek judicial review. He later got an opportunity. Does that meet the statute? It doesn't seem to meet the language of the statute. I think that the import of the statute and the language of the statute is that if the administrative proceeding followed by whatever proceeding could happen thereafter, he still has the right in any collateral proceeding that he has to exercise that right once given the opportunity. I think that's a fairly stretched view. It makes a lot of sense, by the way. It would make sense the first time. But, of course, we know they haven't and there's no law on it. So why don't we get – what's your answer to didn't he concede removability So the – and just to finish my last point on that last question, I won't belabor it, but the cases all do say that there has to be no prior opportunity and no – the government has not raised the argument before this Court in prior cases. But to answer your question, Your Honor, about whether he didn't concede. What case says there must have been no prior opportunity? The Arias-Ordonez says, A defendant must be permitted to bring a collateral challenge to a prior deportation that underlies a criminal charge where the prior deportation proceeding effectively eliminated the right of the alien to obtain judicial review. Yeah, but that doesn't say there must have been no prior – I was really interested when you said those words, but I don't see them in the case. Jairus Gayan says, In a criminal proceeding, the due process clause of the Fifth Amendment requires a meaningful opportunity for judicial review. But we're asking what the statute provides. Correct. And I think that – You know what? You are belaboring this. I apologize. I suggest you get to the merits of it. I apologize. And I do want to address your question about when he didn't. Yes. I think you should or you might not be able to. The point of both his first hearing and his second hearing before the immigration judge were that he initially didn't concede removability because he said that he had a potential deport – he had a potential document that would prove that he was lawfully admitted. But he did concede that he committed a CIMT. Yes. He did. And the immigration judge actually rejected that concession. And that's a – But did he reject that concession? At ER 120, the immigration judge said – I was very confused. So you're talking the first hearing or the second hearing? At the first hearing. Okay. When he was asked whether he would concede that he had committed a crime of moral turpitude, he did. And the immigration judge said because this defendant had already expressed that he had been potentially lawfully admitted, the immigration judge responded to that concession by saying if he had some admission into the United States, then the charge of being inadmissible is inappropriate even under a crime involving moral turpitude, which is to say that once someone is lawfully admitted, it is a different standard to determine his removability for committing a crime of moral turpitude. So that takes us back to whether he was really contesting – Yes. – whether he was unlawfully in the United States. And recognizing that he was proceeding pro se, do you really think he was contesting that? The immigration judge did determine that he wasn't just going to concede that he had been – that he had entered unlawfully, and that is why the second hearing was held, so that this defendant could bring in any documents to prove that. It seemed from the first hearing that he thought he – he came in as a child. His mother had some documents. He thought maybe they had some documents. Went back to check. That's why they had the second hearing. In the second hearing, he says, no, I don't have anything that – any documents. And he sort of – he says he wishes he could stay because he has a child. But he ultimately just acquiesces and says, you know, all right, I have nothing. Go ahead. Remove me. And I think that that speaks to sort of how this progressed, which was that he did present his employment authorization card. The immigration judge rejected that as an admissibility document. And then ultimately, at the point at which this defendant had effectively been found to have entered unlawfully, he conceded that issue. The problem here is that voluntary departure is a remedy designed for someone who is going to readily admit all of the allegations against him and merely seek to leave of his own accord at his own expense. And this defendant, I think the easiest way to look at what happened was he simply wasn't a good candidate for voluntary departure because initially he expressed that he might have been lawfully admitted. And then even after that, he said, I want an opportunity to stay. And that's exactly the opposite of what voluntary departure requires. But that goes to the discretionary exercise. Yes. So we'll focus instead on whether he was improperly denied the right to at least argue for it. And you say because he, in effect, put the government through two hearings before he finally said, yeah, you got me, I'm here illegally, that's contesting removability. I think that's right. And the concession on the CIMT doesn't matter because, absent the finding that he was here illegally, the CIMT wouldn't make him removable. That's the government's position? Correct. Correct, Your Honor. And I would add to that that this Corton Bonk decision in Garcias-Rodriguez said that voluntary departure is a quid pro quo in which the government gets the benefit of an expedited proceeding in which the alien simply admits everything and leaves at his own expense. But he did give up his right to appeal. Yes, Your Honor. And that goes to show, I mean, if you're going to take advantage of voluntary departure, you have to give up your right to appeal. Yes. I think the reason why that wasn't sufficient was that he didn't concede everything. He actually made repeated requests to be permitted to stay, and the regulation specifically prescribes voluntary departure where you cannot make a request that is inconsistent with voluntary departure. And it's not necessarily even a formal application. The regulation says you cannot make a request. And what this defendant asked for again and again was the opportunity to remain. Even in asking for voluntary departure, his answer as to why he should be granted voluntary departure was, quote, I'm trying to stay here. And the problem for this immigration judge is that that is not a form of relief that can be granted to somebody who really does want to remain. Your Honor, I did just want to alert the Court of the citation for the case that was raised earlier. That's 424F3R913, the Smith-Volter case. And, yes, Your Honor, you were on the panel for that. I think, though, ultimately what this case comes down to is that voluntary departure, this is not a case about somebody who could have been permitted to remain in the United States indefinitely. Well, no, that's right. But let's assume that he hadn't contested removability. Yes. At that point, wasn't what the judge was saying to him inappropriate? I'm bothered by what the judge said about eligibility for voluntary departure at the end of the hearing, which is basically, you know, we have this thing called voluntary departure, but you can't get it. Well, he did say at the initial master calendar hearing with everybody what voluntary departure was. And the comment about you're ineligible came at the very end after the defendant had already made clear again and again that what he wanted was to remain in the United States, and therefore it was not a form of relief to which he was entitled. You know, he wasn't really requesting any form of relief. He was just saying, I mean, it's really almost sad, because he wasn't articulating any requests for relief. He obviously was confused and didn't know any better. And he was saying, yeah, if all things being equal, I want to stay with my kid. But he wasn't, like, contesting that he was going to have to leave. And I think ultimately all of those facts were before the immigration judge. I would point, Your Honor, to one point in the excerpts of record where the defendant actually told the probation officer in his prior case that he had no children at ER 309 and has never had any children. So that is questionable as to what his circumstances were. But the equities were certainly as presented before the immigration judge when he made his decision. Has he completed his term of incarceration? No. I was working the numbers. He should have if he got 16 months in September of 2017. I think his sentence was longer than that. Two concurrent 16-month sentences. Am I wrong? Those were the sentences for his underlying offenses for his 1326 conviction. I believe that the sentence was lengthier. Okay. That's fine. Isn't there an issue about whether we look at the prior convictions as a felony because they were no longer felony when he was sentenced? Isn't that an issue in this case? That is an issue that we didn't actually really litigate either in the district court or before this court. But it would ordinarily be. And if this court finds that this defendant was denied an opportunity to apply and that the district court should reevaluate his plausibility for voluntary departure, that's an issue that we can raise before the district court then. You know, I thought maybe I'm wrong. He got sentenced based on these prior convictions, correct? He got sentenced. His sentence was based on the two California convictions, was it not? Yes. That's the sentencing issue. That's the issue that I thought Judge Wardlow was asking. Oh, I'm sorry. That's what Your Honor is referring to. About the sentencing, the sentencing issue, I apologize. I am out of time. But just to address that. Please. The issue is whether he sustained a felony conviction for which the term of incarceration was beyond 12, 13 months, I believe, under the guidelines. And under this court's precedence, he did because in 2007 and in 2009, he sustained felony convictions that at the time his sentences were imposed were longer than 13 months. Okay. Thank you, counsel. Thank you, Your Honors. I know you have a limited amount of time, but I wanted to ask a quick question on the issue of prejudice. Assuming there was a due process violation here, it seems to me that all of the equities that when he would have been, would have told the magistrate if he had been given the opportunity were apparent, that the magistrate, the IJ, would have been apparent from the record. So could you address that issue? Absolutely, Your Honor. And I have two answers to that. First, I would respectfully dispute that point. There were issues that were not before the IJ. For example, his work history did not come up. Also, his very traumatic childhood, nothing of that came up. The history of domestic abuse that he suffered. Also, the humanitarian circumstances underlying his mother's application for relief under the NACARA program. But the second, I guess legally, what I would say to that, is that this court has said when we're evaluating prejudice, and this is very clearly in Valdez-Novoa, which is cited in our briefs, is that we survey decisions. So the question isn't really what this judge would have done. It's at serving decisions, you know, writ large, is it plausible? And I think Melendez-Castro also illustrates that. Because in that case, the judge said, no matter what, I would deny you on discretion because of your criminal history. I know it's an objective standard. I'm sorry? I know it's an objective standard. Sure, sure. And I don't read the government to have disputed that someone with these equities, it's plausible that they could have gotten voluntary departure. Your Honor, I see you've been graciously granted a few more minutes. I would briefly, unless the court would like me to address something different, address the point that the government was making regarding him expressing a desire to stay in the United States. The voluntary departure regulation does not say you can't express a desire to stay in the United States. I think it's very, I mean, it's just understandable that someone who's lived here for 19 years, we're talking about a 19-year-old here, the first thing he sits in court, it says, judge, please, is there anything I can do to stay? I want to stay. I want to stay. And when the judge finally made clear to him, no, you can't, he said, as you please. I might not be saying that exactly right. Yeah, that's exactly what he said. He said, all right, then, as you please. So he submitted, when the judgment made clear that that wasn't an option, he said, okay, judge. So, and again, the language of the regulation doesn't say that you can't express a desire. Unless the court has any further questions? No, thank you, counsel. Thank you. United States v. Fidel Castillo is submitted.
judges: Wardlaw, Hurwitz, Korman